# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JONATHAN JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | C.A. No. 22-1567 (JLH) |
| ) | |
| BRIAN EMIG, Warden, and ) | |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

---

Jonathan Johnson. *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 15, 2025
Wilmington, Delaware

**Hall, District Judge:**

Petitioner Jonathan Johnson is an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware. On October 7, 2022, Petitioner filed a document styled, "Writ of Declaratory Judgment." (D.I. 1.) The Court construed it as a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and directed the Clerk to open a new civil case. (D.I. 1-2; D.I. 1-3.) Petitioner thereafter filed an Amended Petition. (D.I. 16.) Respondents filed a Motion for Leave to File Motion to Dismiss. (D.I. 23.) The Court granted leave and the Motion to Dismiss was filed on November 27, 2024. (D.I. 24; D.I. 25.) In the Motion to Dismiss, Respondents assert that the Petition is time-barred. (D.I. 25.) Petitioner did not respond. For the reasons discussed below, the Court dismisses the Petition and Amended Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

**I.     BACKGROUND**

The Delaware Superior Court summarized the relevant facts of Petitioner's underlying criminal conviction as follows:

> [Petitioner] was charged with multiple offenses, after law enforcement executed a search warrant of his home and located firearms, ammunition, heroin, cocaine, and marijuana. On January 27, 2017, [Petitioner] filed a Motion to Suppress, later denied. On April 25, 2017, the day of trial, [Petitioner] accepted a plea to one count of Drug Dealing and one count of Possession of a Firearm During the Commission of a Felony (PFDCF). The State entered a *nolle prosequi* on the remaining charges.
>
> On July 26, 2017, the State filed a Motion to Declare [Petitioner] a Habitual Offender and to be sentenced on the PFDCF charge under 11 *Del. C.* § 4214. On October 27, 2017, the Court granted the State's motion, and sentenced [Petitioner] to the minimum mandatory twenty-five years at Level V for the PFDCF charge, and to probation for the Drug Dealing offense.

1

*State v. Johnson*, No. 1602004456A, 2021 WL 1407362, at *1 (Del. Super. Ct. Apr. 13, 2021) (footnotes omitted) (cleaned up). Petitioner did not file a timely direct appeal.[1] On October 17, 2018, Petitioner filed his first Motion for Postconviction Relief under Delaware Superior Court Criminal Rule 61 (first Rule 61 Motion), which the Delaware Superior Court denied. *See Johnson*, 2021 WL 1407362. The Delaware Supreme Court affirmed that decision on October 7, 2021. *See Johnson v. State*, No. 153, 2021, 2021 WL 4699252 (Del. Oct. 7, 2021). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

Petitioner then filed a Motion for Correction of Illegal Sentence on November 15, 2021, which the Delaware Superior Court denied on November 18, 2021. (D.I. 21-1 at 17, Entry Nos. 123, 124). Petitioner did not file an appeal. On November 23, Petitioner filed a letter seeking to add supplemental claims to his Motion for Correction of Illegal Sentence, and, on December 1, 2021, a Motion to Reconsider the denial of his Motion for Correction of Illegal Sentence. (D.I. 21-1 at 17, Entry Nos. 125, 126.) On December 15, 2021, the Superior Court denied those requests. (D.I. 21-1 at 18, Entry No. 128.) Petitioner filed a second Rule 61 Motion on February 3, 2022, and a third on May 15, 2023. (D.I. 21-1 at 18, Entry No. 131; D.I. 21-1 at 24, Entry No. 176.) Both were summarily dismissed. (D.I. 21-1 at 19, Entry No. 134; D.I. 21-1 at 24, Entry No. 179.) To the extent Petitioner filed a fourth Rule 61 Motion, the Superior Court summarily dismissed anything "that falls within the purview of Rule 61" in an Order dated March 25, 2024. (D.I. 21-1 at 26, Entry No. 196.) Throughout his state court proceedings, Petitioner filed numerous letters, requests, and motions in the Delaware Superior Court and Supreme Court. (D.I. 21-1.) Those not discussed herein have no bearing on this Court's analysis.

---

[1] Johnson filed an appeal on February 29, 2024, over six years after the sentencing order; the Delaware Supreme Court dismissed the appeal as untimely. *See Johnson v. State*, No. 89, 2024, 2024 WL 1209526 (Del. Mar. 20, 2024) (characterizing Petitioner as a "frequent filer").

2

## II.     STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) prescribes a one-year limitations period for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See* 28 U.S.C. § 2244(d)(2) (statutory tolling); *Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C). In his Amended Petition, Petitioner asserts that his Petition is timely because it was filed "within one year of [the] date [he had] reason to believe" the State allegedly withheld *Brady*[2] material, thus arguably triggering the application of § 2244(d)(1)(D).

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

3

(D.I. 16 at 34–35.)  The allegedly withheld Brady material consists of Petitioner's February 6, 2016 complaint and arrest warrant.  Petitioner contends they were not produced until March 5, 2020, when they were attached to the State's response to his Petition for a Writ of Mandamus filed in the Delaware Supreme Court.  (D.I. 16 at 10, 34–35; D.I. 16-1 at 9–25)

Respondents say, and the Court agrees, that the record shows that the State produced, and defense counsel knew of and relied on, the complaint and arrest warrant before Petitioner's plea. The Motion to Suppress filed by Petitioner's defense counsel was based, at least in part, on information provided in the complaint and arrest warrant.[3]  Additionally, correspondence between counsel regarding discovery, as well as state court docket entries, further indicate the State's timely production of discovery.  *See* D.I. 21-24 at 27–29 (letter from defense counsel requesting discovery, including "[c]opies of all executed warrants of arrest and all executed search warrants relating to the above-captioned case(s), including all affidavits and warrant returns"); D.I. 21-1 at 2, Entry No. 5 (docket entry indicating defense counsel's acknowledgment of receipt of discovery); *see also State v. Johnson*, No. 1602004456A, 2023 WL 4441860, at *3 (Del. Super. Ct. July 10, 2023), *aff'd*, 315 A.3d 517 (Del. 2024) (determining Johnson's "concession that he found this 'new evidence' in his discovery package confirms what is obvious:  the evidence is not new").

---

[3] The complaint and arrest warrant erroneously stated that the officers executed a search warrant at "approximately 1308," and Petitioner moved to suppress on the basis that the search occurred before the search warrant was issued at 2:10 pm.  *See* D.I. 16-1 at 21.  In response to the motion, the State presented the police officer's handwritten notes indicating that the search actually took place at 3:08 p.m.  (D.I. 21-3 at 26.)  In any event, the Superior Court denied the Motion to Suppress on the grounds that the police were given permission by a resident to enter the building and search the apartment, and the fact that the police, as a precautionary matter, "obtained a warrant does not change the fact that they had probable cause and permission to search the property, in the first place."  (D.I. 21-24 at 54–71.)  *See State v. Johnson*, No. 1602004456A, 2020 WL 4746541, at *1 (Del. Super. Ct. Aug. 17, 2020); D.I. 21-3 at 15.

Even if the complaint and arrest warrant were not produced, § 2244(d)(1)(D) only extends the start date of AEDPA's statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered *through the exercise of due diligence*." *See* 28 U.S.C. § 2244(d)(1)(D) (emphasis added). "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004). Section 2244(d)(1)(D)'s "due diligence depends on each petitioner's circumstances and the nature of the claim asserted, and it requires that we assess, in light of that context, what a petitioner 'would [have] reasonably expect[ed]' might result from investigative efforts." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 289 (3d Cir. 2021) (citing *Wilson v. Beard*, 426 F.3d 653, 661 (3d Cir. 2005). The Third Circuit has specifically addressed § 2244(d)(1)(D)'s due diligence requirement in the context of a *Brady* claim. While a "petitioner's failure to search for *Brady* material of which he is unaware and which he is entitled to presume is non-existent does not fall short of the diligence required by § 2244(d)(1)(D)," *see Bracey*, 986 F.3d at 291, a petitioner is not diligent where the record demonstrates that the defendant or defense counsel was aware of potential *Brady* material but failed to pursue an investigation, *id.* at 294. Certainly, Petitioner's own criminal complaint and arrest warrant are documents that Petitioner and his counsel were aware of prior to his guilty plea.

What's more, § 2244(d)(1)(D) "provides a petitioner with a later accrual date than Section 2244(d)(1)(A) only 'if vital facts could not have been known.'" *Schlueter,* 384 F.3d at 74 (quoting *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000)). Petitioner's Petition provides no indication that there is any information in his complaint or arrest warrant that was in any way helpful to him.[4]

---

[4] Petitioner also does not explain how the complaint and arrest warrant are favorable to him or material such that prejudice resulted from their suppression.

5

He merely asserts that the State failed to provide the documents. For the foregoing reasons, Petitioner has failed to establish that § 2244(d)(1)(D) applies.

Accordingly, the one-year limitations period began to run when Petitioner's judgment became final under § 2244(d)(1)(A). Under § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the time period allowed for seeking direct review. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). In this case, the Superior Court sentenced Petitioner on October 27, 2017. Petitioner did not timely appeal from that judgment, so his judgment became final on November 27, 2017, when the thirty-day period to appeal expired.[5] *See* Del. Code Ann. tit. 10, § 147 (establishing thirty-day appeal period in criminal actions); Del. Supr. Ct. R. 6(a)(iii)(A) (providing appeal from criminal conviction must be within thirty days after sentence imposed). Applying the one-year limitations period to that date, Petitioner had until November 27, 2018, to timely file a habeas petition. Petitioner, however, did not file the instant Petition until October 7, 2022, almost four years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence. The Court will discuss each of those possibilities.

    A.    **Statutory Tolling**

Under § 2244(d)(2), a properly filed state postconviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any postconviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See* 28 U.S.C. § 2244(d)(2); *Swartz v. Meyers*, 204 F.3d 417, 420–24 (3d Cir.

---

[5] The thirtieth day fell on Sunday, November 26, 2017. Under Delaware Supreme Court Rule 11(a), when the last day of a time period falls on a weekend, the period extends to the next day the Clerk's office is open.

2000); *see also Smith v. Warden Baylor Womens Corr. Inst.*, No. 21-1880, 2024 WL 80897, at *4–5 (3d Cir. 2024) (state postconviction motion filed after AEDPA limitations period has expired does not toll or revive limitations period). The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state postconviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

In this case, the limitations period started to run when Petitioner's judgment became final on November 27, 2017, when the thirty-day appeal period expired. The limitations period ran for 323 days until Petitioner filed his first Rule 61 Motion on October 17, 2018. The limitations period was tolled until October 7, 2021, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's first Rule 61 Motion. At this time, 323 days had run on the limitations period, with 42 (365 – 323 = 42) days remaining. The limitations period started to run again on October 8, 2021. The limitations period ran another 38 days until Petitioner filed his Motion for Correction of Illegal Sentence on November 15, 2021. At that point, 4 days remained in the limitations period (42 – 38 = 4). Assuming (for purposes of the argument only) that the limitations period was tolled until thirty days[6] after the Superior Court's December 15, 2021 denial of Petitioner's Motion to Reconsider and letter requests – which is January 14, 2022 – the limitation period began to run again on January 15, 2022. With 4 days remaining in the limitations period, Petitioner had until January 18, 2022 to file his Petition. The Petition, however, was not filed until October 7, 2022.

---

[6] As indicated above, even though Johnson did not file an appeal from the December 15, 2021 Order, the limitations period is tolled until the end of the time period allowed for seeking direct review.

7

Thus, even after applying the available statutory tolling, the Petition is time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *See Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 272–73 (3d Cir. 2022) (citing *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). To satisfy the diligence prong, a petitioner must demonstrate he has been pursuing his rights with reasonable diligence, a fact-specific inquiry that depends on the petitioner's circumstances. *See Martin*, 23 F.4th at 273. The obligation to act diligently pertains not only to the filing of the federal habeas petition, but also while exhausting state court remedies. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799–800 (3d Cir. 2013). Additionally, a garden variety of excusable neglect does not warrant equitable tolling. *See Holland*, 560 U.S. at 650–51.

As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will warrant equitable tolling only if there is "a causal connection, or nexus, between the extraordinary circumstances [the petitioner] faced and the petitioner's failure to file a timely federal petition." *See Ross*, 712 F.3d at 803.

8

Petitioner does not assert, nor does the Court discern, any extraordinary circumstances that prevented him from timely filing his Petition. Thus, the Court concludes that the doctrine of equitable tolling is unavailable to Petitioner on the facts he has presented.

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin*, 569 U.S. at 392; *Wallace*, 2 F.4th at 150–151. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To satisfy this extraordinary exception, "a petitioner must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.,* a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence." *Wallace*, 2 F.4th at 151. "The standard does not require absolute certainty of guilt or innocence, but it is demanding and will be satisfied only in rare and extraordinary cases where the evidence of innocence is so strong that it undermines confidence in the trial's outcome." *Id.*

The actual innocence exception is inapplicable here – Petitioner does not allege that he is actually innocent. Additionally, to the extent Petitioner's Amended Petition contains claims alleging incompetency to enter a guilty plea, that also does not state a claim of actual innocence because a petitioner's mental state at the time of a guilty plea does not bear on his mental state at the time of the crime. *See Goodman v. May*, No. 22-1075-RGA, 2024 WL 341487, at *4 (D. Del. Jan. 30, 2024) (citing *Williams v. Covello*, 2021 WL 6551280, at *7 n.7 (C.D. Cal. Dec. 15, 2021) (collecting cases)).

### III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is

9

appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition and Amended Petition are time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

### IV.     CONCLUSION

For the reasons discussed above, the Court denies the instant Petition and Amended Petition without an evidentiary hearing and without issuing a certificate of appealability. The Court will issue an Order consistent with this Memorandum Opinion.